USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAURA DEVLIN,

Plaintiff,

- against -

EQUITABLE FINANCIAL LIFE INSURANCE COMPANY,

Defendant.

**25-CV-03283 (VM)**

**DECISION & ORDER**

**VICTOR MARRERO, United States District Judge.**

Lead Plaintiff Laura Devlin ("Lead Plaintiff" or "Devlin") brought this putative class action against Equitable Financial Life Insurance Company ("Defendant" or "Equitable"). (See "Complaint" or "Compl.," Dkt. No. 1.) Devlin, a teacher who purchased an EQUI-VEST Series 200 variable annuity ("EQUI-VEST annuity") contract in 2003 and made additional contributions to her annuity until October 2021, asserts a claim under Section 10(b) the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, for fraudulent and misleading statements disseminated by Equitable in connection with the EQUI-VEST annuity. Specifically, Devlin claims that Equitable assessed fees on her EQUI-VEST annuity that were not disclosed on the account statements that

Equitable provided to Devlin, thereby diminishing the value of her account and any subsequent contributions.

Equitable now moves to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion to Dismiss" or "MTD," Dkt. No. 56.) Equitable also moves to strike the Complaint's class allegations. (See "Motion to Strike" or "MTS," Dkt. No. 58.) For reasons discussed further below, Equitable's Motion to Dismiss and Motion to Strike are **DENIED**.

## I. BACKGROUND[1]

### A. FACTUAL BACKGROUND

#### 1. Equitable's Variable Annuities

Equitable is a New York life insurance company whose primary business is providing variable annuity, life insurance, and employee benefit products to both individuals and businesses. (See Compl. ¶ 11.) A variable annuity is a contract that has an investment component and is considered a security under federal law. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 105 (2d Cir. 2001) ("Variable annuities must be registered with the SEC as securities under

[1] Unless otherwise noted, the following facts are taken from the Complaint, which the Court must take as true for the purpose of resolving Equitable's motion to dismiss. See Safka Holdings LLC v. iPlay, Inc., 42 F. Supp. 3d 488, 490-91 (S.D.N.Y. 2013).

the Securities Act of 1933, *codified* at 15 U.S.C. § 77a *et seq.*"). A person purchases a variable annuity contract from an insurance company by making an upfront payment or a set of installment payments. (See Compl. ¶ 28.) In exchange, the insurance company provides a named annuitant, usually the contract owner, a future lump-sum payout or a series of payouts. (See id.)

When the variable annuity contract holder makes an upfront payment or a series of installment payments, they allocate that money to an investment portfolio with a range of investment options, known as sub-accounts. (See id. ¶ 31.) The investment options for the sub-accounts in a variable annuity are typically mutual funds that invest in stocks, bonds, money market instruments, or some combination of the three. (See id.) The value of the investment as a variable annuity owner will vary depending on the performance of the investments in the sub-account. (See id. ¶ 29.) An investor can also decide to start, stop, increase, or decrease their contributions to the variable annuity. (See id. ¶ 31.)

Equitable markets and sells EQUI-VEST annuities as a retirement product to retail investors nationwide, with a particular focus on K-12 schoolteachers who invest in the variable annuities through defined contribution retirement plans sponsored by their respective school district

employers. (See id. ¶ 43.) Generally, investors in EQUI-VEST variable annuities make an initial investment and then make additional periodic investments thereafter in exchange for Equitable agreeing to make periodic payments to the investor at retirement based, at least in part, on the performance of sub-accounts that invest in certain underlying investments. (See id. ¶ 42.)

Equitable charged investors in EQUI-VEST variable annuities with fees and expenses, including Separate Account Expenses and Portfolio Operating Expenses. (See id. ¶ 70.) For Separate Account Expenses, EQUI-VEST investors paid on an ongoing basis for the mortality and expense risks associated with the variable annuity and administrative and financial accounting costs. (See id.) Equitable deducted Separate Account Expenses on a daily basis at an annual rate ranging from approximately 0.10% to 1.49% of net assets in the variable investment options. (See id.) For the Portfolio Operating Expenses, all EQUI-VEST investors were charged on an ongoing basis by the investment funds underlying the variable annuity for management fees, fees for the marketing and selling of mutual fund shares, service fees, and/or other expenses. (See id.) The underlying investment funds deducted Portfolio Operating Expenses on a daily basis at an annual rate ranging from approximately 0.55% to 2.26% of the amount

invested in such investment funds. (See id.) These fees and expenses were listed and described in the prospectuses that Equitable filed with the SEC as part of the registration statements associated with the investment options for the EQUI-VEST annuities. (See "Declaration of Kurt Wm. Hemr" or "Hemr Decl.," Dkt. No. 60, Ex. 1, p. 14.)

2. Equitable's EQUI-VEST Annuity Account Statements

In 2003, Lead Plaintiff Devlin, a high school teacher, opened an EQUI-VEST annuity contract. (See Compl. ¶ 10.) She made contributions to that annuity through October 2021. (See id.) Equitable sent Devlin, and all EQUI-VEST annuity investors, quarterly and calendar year-end account statements (the "Account Statements"). (See id. ¶ 45.) These statements provided EQUI-VEST annuity investors with account information, including investment performance information and current account values by investment option. (See id.)

In the Account Statements, Equitable reported fees in four fields. (See id. ¶ 46.) In all four locations of the Account Statements, Equitable reported either zero fees or an amount of fees that were only a small fraction of the overall fees actually paid by the investor. (See id. ¶ 7.) The Account Statements omitted Separate Account Expenses and Portfolio Operating Expenses. (See id. ¶ 47.) Nowhere in the Account

Statements did Equitable provide any description or explanation regarding what the fees and expenses listed in the Account Statements included or excluded. (See id. ¶ 46.) The Court addresses the four different fields where Equitable reported fees in the Account Statements in turn.

First, on the front page of all of the EQUI-VEST Account Statements, Equitable included several line items providing information on the performance of the variable annuity, including "Net Investment Portfolio Results," "Total Account Value," and "Fees and Expenses." (See id. ¶ 48.) The prospectuses for the EQUI-VEST annuities described that the account values of the investments already reflected certain fees deducted, including Separate Account Expenses and Portfolio Operating Expenses. (See "Hemr Decl.," Dkt. No. 60, Ex. 1, p. 14.) However, the Account Statements themselves did not indicate or explain what fees were included or excluded in the "Fees and Expenses" line item on the front page. (See Compl. ¶ 48.) The Account Statements reported "Fees and Expenses" on the front page as $0.00, as is seen in the following example:

## Account At A Glance

Contract Number*: [redacted]471
Contract Type: Tax Sheltered Annuity - Pub School
Unit Name: HUNTLEY COMM UNIT SCH 158
ATT: KIMIETH RUTHERFORD

Unit No.: 012909-0001 Series: 200
Owner: [redacted]
Annuitant: [redacted]

Death Benefit: **$98,205.54**
Current Beneficiary:
[redacted]

To update your beneficiary information, visit equitable.com/customer-service/equivest anytime to download a Beneficiary Change form or contact Customer Service for assistance.

| | This Quarter July 01, 2021 - September 30, 2021 | Year to Date | Since Purchase |
|---|---|---|---|
| Beginning Account Value | $95,529.20 | $77,849.04 | |
| Contributions and Additions | $4,200.00 | $12,600.00 | $70,403.16 |
| Withdrawals | $0.00 | $0.00 | $0.00 |
| Fees and Expenses | $0.00 | $0.00 | |
| Net Investment Portfolio Results | ($1,523.66) | $7,756.50 | |
| **Total Account Value** | **$98,205.54** | **$98,205.54** | |

The account value shown on this statement may not reflect your most recent contribution. These will be confirmed on your next report.
* Contract opened on June 30, 2003.

*00842115-013370-003-001-0

(Id.)

Second, all of EQUI-VEST's Account Statements included a separate section titled "Transaction Summary by Fund." (See id. ¶ 49.) This section included a column titled "Fees and Expenses" that reported the same Administrative and Transaction Fees as the "Fees and Expenses" line item on the front page of the Account Statement, but on a pro rata basis, broken down by each underlying investment fund within the variable annuity. (See id.) Devlin's Account Statements reported $0.00 in "Fees and Expenses" for each underlying investment fund. (See id.)

Third, the "Transaction Summary by Fund" section also included another column titled "Plan Operating Expenses." (See id. ¶ 50.) This column reported fees on a pro rata basis for each underlying investment fund within the variable annuity that Equitable deducted and paid to the investor's

retirement plan or to a third-party administrator of their retirement plan. (See id.) Again, Devlin's Account Statements reported $0.00 in "Plan Operating Expenses" for each underlying investment fund. (See id.)

An excerpt of Devlin's Account Statement shows $0.00 in "Fees and expenses" and "Plan Operating Expenses" for each underlying investment fund within the variable annuity:

## Transaction Summary by Fund *(con't)*

| | Balance as of 07/01/2021 | Contributions and Additions | Withdrawals | Fees and Expenses | Net Transfers | Net Investment Portfolio Results | Plan Operating Expenses | Balance as of 09/30/2021 |
|---|---|---|---|---|---|---|---|---|
| EQ/T. Rowe Price Growth Stock | $12,834.17 | $420.00 | $0.00 | $0.00 | $0.00 | ($168.19) | $0.00 | $13,085.98 |
| **Small/Mid Cap** | | | | | | | | |
| EQ/AB Small Cap Growth | $18,124.61 | $630.00 | $0.00 | $0.00 | $0.00 | ($407.74) | $0.00 | $18,346.87 |
| 1290 VT Small Cap Value | $15,682.33 | $630.00 | $0.00 | $0.00 | $0.00 | ($823.53) | $0.00 | $15,488.80 |
| **Bonds** | | | | | | | | |
| EQ/Core Bond Index | $10,268.40 | $630.00 | $0.00 | $0.00 | $0.00 | ($59.11) | $0.00 | $10,839.29 |
| Multimanager Core Bond | $7,029.52 | $420.00 | $0.00 | $0.00 | $0.00 | ($39.47) | $0.00 | $7,410.05 |
| **Guaranteed - Fixed** | | | | | | | | |
| Guaranteed Interest Account | $10,954.48 | $630.00 | $0.00 | $0.00 | $0.00 | $84.54 | $0.00 | $11,669.02 |
| TOTAL PORTFOLIO | $95,529.20 | $4,200.00 | $0.00 | $0.00 | $0.00 | ($1,523.66) | $0.00 | $98,205.54 |

(Id. ¶ 51.)

Fourth, the Account Statements also included a section titled "Contribution and Fee Summary." (Id. ¶ 52.) The "Contribution and Fee Summary" section in Devlin's Account

Statements also reported no fees, as can be seen in the following example:

**Contribution and Fee Summary**

| Trade Date | Salary Reduction Date | Transaction Type | Amount | Units | Unit Value |
|---|---|---|---|---|---|
| **07/02/2021** | **Not Provided** | **Contribution** | **$700.00** | | |
| | | Guaranteed Interest Account | $105.00 | | |
| | | EQ/Equity 500 Index | $70.00 | 0.0712 | $983.701608 |
| | | EQ/AB Small Cap Growth | $105.00 | 0.1466 | $716.026786 |
| | | EQ/T. Rowe Price Growth Stock | $70.00 | 0.1489 | $470.186940 |
| | | Multimanager Core Bond | $70.00 | 0.4384 | $159.667622 |
| | | EQ/Lg Cap Val Managed Vol | $70.00 | 0.2777 | $252.090957 |

**Contribution and Fee Summary** *(con't)*

| Trade Date | Salary Reduction Date | Transaction Type | Amount | Units | Unit Value |
|---|---|---|---|---|---|
| | | EQ/Equity 500 Index | $70.00 | 0.0712 | $983.692052 |
| | | EQ/AB Small Cap Growth | $105.00 | 0.1493 | $703.313914 |
| | | EQ/T. Rowe Price Growth Stock | $70.00 | 0.1491 | $469.416853 |
| | | Multimanager Core Bond | $70.00 | 0.4368 | $160.263452 |
| | | EQ/Lg Cap Val Managed Vol | $70.00 | 0.2825 | $247.817493 |
| | | 1290 VT Small Cap Value | $105.00 | 0.6556 | $160.149254 |
| | | EQ/Core Bond Index | $105.00 | 0.8573 | $122.480934 |

(Id.)

3. SEC Consent Order

On July 18, 2022, the SEC issued an order that it had settled charges that Equitable had violated Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 based on Equitable providing Account Statements to approximately 1.4 million investors since at least 2016 that included materially misleading statements and omissions concerning significant fees paid in connection with variable annuity investments.

(See Compl. ¶¶ 57-58.) As part of that settlement, Equitable did not admit or deny the facts of the SEC's Consent Order. (See "SEC Consent Order," or "Consent Order," Dkt. No. 61, Ex. B.)

Equitable consented to settle the violations with the SEC by providing $50 million in compensation to affected investors. (See Compl. ¶ 59.) The SEC also required Equitable to modify its EQUI-VEST Account Statements to provide investors greater clarity regarding what fees and expenses were being charged by Equitable. (See id. ¶ 60.)

As detailed in the SEC's Consent Order, in May 2017, Equitable and other vendors met with an advisory committee to the school district ("School District 1") with which Equitable did the most business in terms of both assets invested and number of investors. (See id. ¶ 63.) During the May 2017 meeting, the chair of School District 1's advisory committee told Equitable that the Account Statements were unclear on the amount of fees investors paid. (See id.) In May 2019, School District 1's advisory committee held another meeting at which it specifically asked if Equitable could list annuity fees on the front page of its Account Statements going forward. (See id. ¶ 64.) Equitable agreed to do so as part of a contract that it entered into with School District 1 covering the period from April 20, 2021, to December 31,

2022. (See id.) Equitable began listing the Separate Account Expenses and Portfolio Operating Expenses near the end of the Account Statements for some of School District 1's investors in the first quarter of 2020 and for all remaining School District 1 investors by the fourth quarter of 2021. (See id.) Equitable made no changes to the EQUI-VEST Account Statements that other investors outside of School District 1 received and instead continued providing them with Account Statements that reported fees and expenses in the same manner that Equitable had been employing since at least 2016. (See id. ¶ 65.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct" — there is not "a probability requirement at the pleading stage." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.”). “In other words, a complaint should not be dismissed when the factual allegations sufficiently ‘raise a right to relief above the speculative level.’” Liboy v. Russ, No. 22-CV-10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting Twombly, 550 U.S. at 555).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must “constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff’s favor.” Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (citation omitted). The Court may also “consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a [Rule] 12(b)(6) motion.” Garcia v. Lewis, No. 05-CV-1153, 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005); see also ATSI Commc’ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (“[W]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.”).

"Plaintiffs' § 10(b) claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud must be stated with particularity." <u>In re UBS Auction Rate Sec. Litig.</u>, No. 08-CV-2967, 2010 WL 2541166, at *13 (S.D.N.Y. June 10, 2010). "These claims are also subject to the heightened pleading standards of the PSLRA, [] which requires that for any action for money damages that requires proof of scienter, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[.]'" <u>Id.</u> (quoting 15 U.S.C. § 78u-4(b)(2)).

## III. DISCUSSION

### A. JUDICIAL NOTICE

A threshold issue the Court must decide is whether certain exhibits to the Declaration of Kurt Wm. Hemr in support of Equitable's Motion to Dismiss and Motion to Strike may be considered in deciding the pending motions.

"Generally, the court is not permitted to consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56 and are afforded an opportunity to submit additional affidavits." <u>In re UBS Auction Rate Sec. Litig.</u>, No. 08-CV-2967, 2010 WL

2541166, at *14 (S.D.N.Y. June 10, 2010) (internal quotation omitted). However, on a Rule 12(b)(6) motion to dismiss, "in addition to the allegations in the complaint, the Court 'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'" Bazzelle v. Novocure Ltd., No. 23-CV-5146, 2025 WL 843668, at *6 (S.D.N.Y. Mar. 18, 2025) (quoting ATSI Commc'ns, 493 F.3d at 98). "If the court takes judicial notice, it does so in order 'to determine *what* statements [they] contained'—but 'again not for the truth of the matters asserted.'" Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)); see also Eden Alpha CI LLP v. Polished.com Inc., 763 F. Supp. 3d 270, 294 (E.D.N.Y. 2025) ("[W]hile the court may take judicial notice of the SEC filings, it cannot do so to establish the truth of the matters asserted therein.")

The Court may properly consider all the prospectuses and Equitable's Form 10-K attached as exhibits to the Hemr Declaration because they are "legally required public disclosure documents filed with the SEC." ATSI Commc'ns, 493 F.3d at 98. Accordingly, the Court considers Equitable's

Exhibits 1-12, 24-26, 31-33, 41-43, 50-67, 69-87, 89-91. Additionally, the Court may properly consider Devlin's Account Statements because the Complaint cites and relies on them. (See Compl. ¶¶ 2, 7.) Accordingly, the Court considers Equitable's Exhibits 68 and 88. Further, the Court may consider the SEC Consent Order attached to Devlin's Memorandum in Opposition to Equitable's Motion to Dismiss the Complaint, (the "MTD Opposition" or "MTD Opp.," Dkt. No. 61, Ex. B). The Complaint cites and heavily relies on the SEC Consent Order and it is also well established that "[c]ourts routinely take judicial notice of agency records, including consent orders, which are available to the public[.]" Maroney v. Woodstream Corp., 695 F. Supp. 3d 448, 453 (S.D.N.Y. 2023). The Court only takes notice of the above exhibits "for the fact that they contain the statements that they contain and were publicly available." In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413, 2013 WL 4647512, at *4 (E.D.N.Y. Aug. 29, 2013).

The Court, however, does not take judicial notice of the trade confirmations that Equitable provided Devlin for her periodic contributions to her variable annuity. While a Court may take judicial notice of "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit," Equitable has not shown that Devlin relied on the trade

confirmations in bringing this action. ATSI Commc'ns, 493 F.3d at 98.

B. MOTION TO DISMISS

1. Devlin's Claims Are Timely

Equitable asserts that Devlin's claims are barred by the two-year statute of limitations governing Section 10(b) claims. See 28 U.S.C. §1658(b)(1). Specifically, Equitable argues that Devlin was on notice of the fees and expenses being charged by Equitable more than two years before Devlin filed this action on July 15, 2024. (See "Memorandum Of Law in Support of Motion to Dismiss" or "Def. Mem.," Dkt. No. 57 at 23-24.) Devlin argues that her claim is timely because she could not have sufficiently pled scienter until the SEC issued its Consent Order against Equitable on July 18, 2022. (See MTD Opp. at 20-22.)

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . a statutory bar as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Fed. Deposit Ins. Corp. v. Credit Suisse First Bos. Mortg. Sec. Corp., 414 F. Supp. 3d 407, 411 (S.D.N.Y. 2019)(internal quotation and alterations omitted). Securities fraud claims brought under Section 10(b) are subject to a

two-year statute of limitations. See 28 U.S.C. §1658(b)(1). "[T]he statute of limitations on a § 10(b) claim cannot commence until, with reasonable diligence, a plaintiff could have discovered facts indicating that 'a defendant made a material misstatement with the intent to deceive—not merely innocently or negligently.'" Gavin/Solmonese LLC v. D'Arnaud-Taylor, 639 F. App'x 664, 666 (2d Cir. 2016) (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 648-49 (2010)). "[A] fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint" with "sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011). "[A] sufficient allegation of scienter requires the pleader to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind such that it is at least as likely as not that the defendant acted with the relevant knowledge or intent." Id. (internal quotation omitted).

The Court finds that Devlin's Section 10(b) claim, which was filed on July 15, 2024, is not time barred because Devlin could not have sufficiently pled scienter until the SEC issued its Consent Order on July 18, 2022. (See Compl.) According to

Devlin, before the Consent Order, she did not know that in 2017 the chair of a school district's advisory committee informed Equitable that the EQUI-VEST Account Statements were unclear regarding the amount of fees investors paid. (See MTD Opp. at 21.) Nor was Devlin aware that following a subsequent meeting with the same school district in 2019, Equitable agreed to modify its Account Statements to more accurately describe fees, but only for EQUI-VEST investors in that school district. (See id.) As is discussed in further detail in Section III.B.2.c, viewed in the light most favorable to Devlin, these facts constitute strong circumstantial evidence of recklessness by the Equitable because they show that Equitable was on notice that the Account Statements were misleading investors and that Equitable only corrected the issue for some investors in one school district while still sending the older version of the Account Statements that they knew were misleading to all other investors. It was not until the release of the SEC Consent Order on July 18, 2022, that Devlin was aware of the facts needed to allege scienter.

That the prospectuses contained information on fees before the 2022 SEC Consent Order is not relevant, as the prospectuses reveal no facts about Equitable's state of mind when it issued the allegedly misleading Account Statements to investors. Additionally, the fact that Equitable announced

its settlement with the SEC in February 2022 is also not relevant because the announcement did not contain sufficient details that would have allowed Devlin to allege scienter.

Accordingly, Equitable has not carried its burden to demonstrate "irrefutably" that "plaintiff discovered or should have discovered sufficient facts to adequately plead its claim." Fed. Deposit Ins. Corp., 414 F. Supp. 3d at 412 (quoting In re Bear Stearns Mortg. Pass-Through Certificates Litig., 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012)).

2. Section 10(b) and Rule 10b-5 Claim

Devlin brings a claim that Equitable violated Section 10(b) and Rule 10b-5. (See Compl. ¶¶ 79-82.) Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 implements Section 10(b) by making it unlawful for issuers of registered securities "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

"To state a claim for relief under § 10(b) and Rule 10b-5, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." Smith v. Gap, Inc., No. 25-1130, 2026 WL 1502033, at *2 (2d Cir. May 28, 2026) (quoting City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc., 153 F.4th 288, 295 (2d Cir. 2025)).

Devlin claims that Equitable violated Section 10(b) and Rule 10b-5 by making untrue statements of material fact by assessing fees that were not disclosed on the EQUI-VEST annuity Account Statements. (See Compl. ¶¶ 79-82.) Equitable argues that Devlin cannot satisfy the elements of a Section 10(b) and Rule 10b-5 claim because: (1) Devlin has not pled materially misleading statements, (2) Devlin could not have reasonably relied on her Account Statements to conclude that no fees or expenses were assessed on investment options, and (3) Devlin has not sufficiently alleged that Equitable acted with scienter in providing the allegedly misleading Account Statements to Devlin. (See Def. Mem. 17-23.) The Court addresses each of Equitable's arguments in turn.

a) Material Misstatement or Omission

Rule 10b-5 "renders it unlawful to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Blank v. TriPoint Glob. Equities, LLC, 338 F. Supp. 3d 194, 209 (S.D.N.Y. 2018) (internal quotation omitted). "A statement is considered materially misleading under § 10(b) when its representations, viewed as a whole, would have misled a reasonable investor." Id.

"[W]hether an alleged misrepresentation or omission is material necessarily depends on all of the relevant circumstances of the case, and materiality is a mixed question of both law and fact." RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., 185 F. Supp. 2d 389, 400 (S.D.N.Y. 2002). Accordingly, at the "motion to dismiss stage a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Blank, 338 F. Supp. 3d at 210.

Here, Devlin asserts that Equitable's Account Statements were materially misleading because they hid the "most significant fees" and only disclosed smaller fees, "often

amounting to zero or a very small number," to investors in the Account Statements. (Compl. ¶¶ 7-8). Equitable counters that the Account Statements were not misleading because the statements presented the unit values for the investment options and Equitable's prospectuses explained that the unit values for the investment options already reflected deductions for certain fees and expenses and what those fees and expenses were. (See Def. Mem. 17-20.)

The Court finds that Devlin sufficiently alleges that the Account Statements were materially misleading. As alleged by Devlin, the Account Statements were false or misleading because Equitable affirmatively stated that there were either no fees or insignificant fees being charged, when there were significant fees and expenses charged by Equitable. (See Compl. ¶ 7.) While Equitable argues that the Account Statements presented the unit values for the investment options and Equitable's prospectuses explained that the unit values for the investment options already reflected deductions for most fees and expenses, the Account Statements did not provide any explanation or clarification as to what fees were being included or excluded. (See id. ¶ 46.) Viewed in the light most favorable to Devlin, the Account Statements provided a misleading impression for investors that there

were no or few fees being charged, when in fact there were significant fees being charged by Equitable.

Accordingly, at this stage, the Court will not dismiss the Complaint on grounds that the alleged misstatements were immaterial. The alleged affirmative misrepresentations of fees and expenses in the Account Statements are not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Ganino v. Citizens Utilities Co., 228 F.3d 154, 162 (2d Cir. 2000). While the EQUI-VEST prospectuses did describe the fees being imposed, this truthful information does not necessarily negate the misleading affirmative statements made by Equitable in the Account Statements. Courts have found that the "[a]vailability elsewhere of truthful information cannot excuse untruths[.]" S.E.C. v. Nadel, 97 F. Supp. 3d 117, 124 (E.D.N.Y. 2015) (quoting Dale v. Rosenfeld, 229 F.2d 855, 858 (2d Cir. 1956)); see also SEC v. Mozilo, 09-CV-3994, 2010 WL 3656068, at *9 (C.D. Cal. Sept. 16, 2010)("[I]n an action that does not involve the fraud on the market presumption, that truthful information is available elsewhere does not relieve a defendant from liability for misrepresentations in a given filing or statement."). Accordingly, at this stage, Devlin has sufficiently alleged materially misleading statements.

b) Reasonable Reliance

"A plaintiff claiming securities fraud under Section 10(b) and Rule 10b-5 must also establish that it reasonably relied on the defendant's alleged misrepresentations or omissions[.]" Tecku v. Yieldstreet, Inc., No. 20-CV-7327, 2022 WL 1322231, at *13 (S.D.N.Y. May 3, 2022). "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." Brown v. E.F. Hutton Grp., Inc., 991 F.2d 1020, 1032 (2d Cir.1993). Factors relevant to the reasonable reliance analysis include:

> (1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333, 338 (2d Cir. 2011).

Here, Devlin has pled actual reliance. Specifically, Devlin pled that she reviewed and relied upon the Account Statements to make investment decisions regarding the EQUI-VEST annuity. (See Compl. ¶¶ 66-68.) Whether this reliance was reasonable is a closer issue. Devlin's lack of sophistication as an investor and longstanding relationship with Equitable from 2003 to 2021 weigh in favor of finding that her reliance was reasonable. However, the availability and accessibility of the prospectuses containing information on the fees imposed on EQUI-VEST investors cuts against finding that Devlin's reliance on the alleged misrepresentations in the Account Statements was reasonable.

The reasonableness of a plaintiff's reliance on alleged misrepresentations is "an intensely fact-specific [inquiry] and [is] generally considered inappropriate for determination on a motion to dismiss." Doehla v. Wathne Ltd., Inc., No 98-CV-6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999). Given that some factors weigh for and against whether Devlin's reliance was reasonable, the Court will reserve its determination on the reasonableness of Devlin's reliance until after discovery, as this is a question of fact inappropriate for determination by the Court at this stage.

c) Scienter

A Section 10(b) plaintiff must plead scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 319 (2007). The PSLRA also requires plaintiffs to "state with particularity [the] facts giving rise to a strong inference that defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "This requirement can be satisfied by 'alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" Stratte-McClure v. Morgan Stanely, 776 F.3d 94, 106 (2d Cir. 2015) (quoting ATSI Commc'ns, 493 F.3d at 99). "'In determining whether the pleaded facts give rise to a 'strong' inference of scienter, the Court must take into account plausible opposing inferences,' such that 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 499 (S.D.N.Y. 2011), on reconsideration, No. 07-CV-10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), and on reconsideration, No. 07-

CV-10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011) (alteration omitted) (quoting Tellabs, 551 U.S. at 324).

Devlin argues that scienter can be shown through both motive and opportunity and by circumstantial evidence of Equitable's conscious misbehaver or recklessness. The Court begins by addressing Devlin's motive and opportunity argument.

(1) Motive and Opportunity

Devlin argues that Equitable had the motive and opportunity to commit fraud. (See MTD Opp. at 18-19.) Specifically, Devlin alleges that Equitable had a financial motive to collect additional contributions and therefore collect more fees. (See id.) Devlin asserts that by portraying EQUI-VEST as a no-fee product in the Account Statements, Equitable was able to increase the amount of contributions and fees it was collecting from investors. (See Compl. ¶¶ 2, 8.)

The Court finds that Devlin has failed to allege a strong inference of scienter under the motive and opportunity prong because she has failed to allege a "concrete and personal" benefit to Equitable resulting from the fraud. Novak v. Kasaks, 216 F.3d 300, 307-08 (2d Cir. 2000). To allege motive and opportunity, "Plaintiffs cannot proceed based on motives possessed by virtually all corporate insiders" such as "(1)

the desire to . . . sustain the appearance of corporate profitability, or of the success of an investment . . . and (2) the desire to maintain a high stock price in order to increase executive compensation . . . or prolong the benefits of holding corporate office." Id. at 307. Instead, plaintiffs must "allege that defendants benefitted in some concrete and personal way from the purported fraud." Id. at 308. For example, an allegation that corporate insiders misrepresented material facts to the public to keep the corporation's stock price artificially high while they sold their own shares at a profit presents a concrete and personal benefit. Id. On the other hand, an allegation that corporate officers wanted to make their business more profitable is not sufficiently concrete or personal. See Heabeart v. Coinbase, Inc., No. 25-CV-9197, 2026 WL 1250578, at *7 (S.D.N.Y. May 7, 2026) ("the Second Circuit has long held that generalized allegations of a desire to profit -- shared by virtually every corporate actor -- do not establish motive under the PSLRA").

Here, Devlin's allegations that officers at Equitable were motivated to increase the amount of fees collected represents a "generalized desire to profit," that is insufficient to establish motive. Id. Devlin has not alleged how Equitable's officers would personally benefit from the increased collection of fees based on the alleged

misrepresentations in the Account Statements. Accordingly, Devlin has not alleged a strong inference of scienter under the motive and opportunity prong because she has failed to allege a "concrete and personal" benefit resulting from the alleged fraud. Id.

(2) Conscious Misbehavior or Recklessness

Devlin also argues that the Complaint raises a strong inference of scienter based on Equitable's conscious misbehavior or recklessness. (See MTD Opp. at 17-18.) Specifically, Devlin argues that the SEC Consent Order shows Equitable knew that the EQUI-VEST Account Statements were confusing to investors since at least 2017 and that in 2019 Equitable began listing all fees on the Account Statements to make them less confusing, but only for investors in one school district. (See id.) Equitable argues that there is no basis to infer that Equitable was acting with scienter regarding how fees and expenses were presented in the Account Statements because Equitable provided information on all of the fees in the relevant prospectuses. (Def. Mem. at 21.)

Conscious misbehavior "encompasses deliberate illegal behavior, such as securities trading by insiders privy to undisclosed and material information or knowing sale of a company's stock at an unwarranted discount." Novak, 216 F.3d at 308 (internal citation omitted). To support an inference

of recklessness, plaintiffs must allege facts showing the defendant's actions were "highly unreasonable, representing an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rothman v. Gregor, 220 F.3d 81, 90 (2d Cir. 2000) (internal quotations omitted). Recklessness is adequately alleged when a plaintiff "specifically alleges defendants' knowledge of facts or access to information contradicting their public statements." In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) (quoting In re eSpeed, Inc. Secs. Litig., 457 F. Supp. 2d 266, 282 (S.D.N.Y. 2006)). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Novak, 216 F.3d at 309.

Viewed in the light most favorable to Devlin, the Complaint alleges facts that constitute strong circumstantial evidence of recklessness by the Equitable. "[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendant's knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew, or more importantly, should have known they were misrepresenting material facts related

to the organization." Novak v. Kasaks, 216 F. 3d 300. Here, as alleged by Devlin, the facts in the SEC Consent Order show that since at least May 2017 Equitable was on notice that the Account Statements were confusing and misleading to investors regarding the amount of fees they paid on their EQUI-VEST annuities. (Compl. ¶ 63.) That a school district in 2017 notified Equitable that the EQUI-VEST Account Statements were unclear on the amount of fees investors paid represents a "red flag" that should have and did put Equitable on notice that the Account Statements were confusing and potentially misleading. In re Refco, 503 F. Supp. 2d at 649 (S.D.N.Y. 2007).

Further, the Complaint alleges with particularity that in May 2019 the same school district asked Equitable to list all annuity fees on the front page going forward, which Equitable agreed to do for that one school district only. (See Compl. ¶ 64.) For all other investors, Equitable continued providing the same Account Statements that Equitable had previously been put on notice were confusing and misleading regarding the amount of fees investors paid. (See id. ¶ 65.) Viewed in a light most favorable to Devlin, this establishes scienter because Equitable knew, or should have known, that the Account Statements listing zero or insignificant fees were misleading, yet Equitable continued

to send these Account Statements to the majority of investors. See Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000); see also In re Bear Stearns., 763 F. Supp. at 423 (scienter properly alleged where the SEC informed the defendant that its models were flawed yet the defendant continued using the models to offer investors falsely optimistic accounts of the defendant's risk and finances). Accordingly, as alleged, Devlin has pleaded facts sufficient to give rise to an inference of scienter based on recklessness that is "at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314.

C. MOTION TO STRIKE

Equitable also seeks to strike the Complaint's class allegations. (See MTS.) Equitable argues that the Complaint's class allegations should be stricken because Devlin cannot plausibly plead reliance on a class wide basis. (See "Memorandum of Law in Support of MTS" or "Def. MTS Mem.," at Dkt. No. 59.)

The Court agrees with Devlin that such a determination is premature because no discovery has occurred and Devlin has not yet sought to certify any class. "Motions to strike are viewed with disfavor and infrequently granted." Emilio v. Sprint Spectrum L.P., 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (alterations omitted) (quoting In re Merrill Lynch & Co.,

Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003)). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Id. (quoting Blagman v. Apple Inc., No. 12-CV-5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013)).

In this Circuit, a motion to strike class allegations is premature when the issues raised are the "same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013). Here, whether reliance can be proven on a class wide basis will be determined when assessing the predominance requirement of Rule 23(b)(3), which "tests whether Proposed Classes are sufficiently cohesive to warrant adjudication by representation." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Accordingly, Equitable's motion to strike is procedurally premature at this stage and is denied without

prejudice to Equitable's ability to oppose class certification on these same grounds.

### C. ORDER

For the preceding reasons, it is hereby

**ORDERED** that Defendant Equitable Financial Life Insurance Company's motion to dismiss and motion to strike class allegations are **DENIED.**

The Clerk of the Court is directed to terminate the motions at docket numbers 56 and 58.

**SO ORDERED.**

Dated: 30 July 2026
New York, New York

Victor Marrero
U.S.D.J.